**FILED**

2010 Mar-15  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY L. MCKENZIE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:09-CV-00069-LSC |
| | ) | |
| CITY OF HOOVER, ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment, which

was filed by the City of Hoover, Alabama ("Hoover"), on November 13, 2009.

(Doc. 17.)   Plaintiff Johnny McKenzie, Jr. ("McKenzie") sued Hoover for

disability discrimination under the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 2611, *et seq*.   (Doc. 1.)  Hoover moved for summary judgment on

all of Plaintiff's claims.   The issues raised in Defendant's motion for summary

judgment have been briefed by both parties and are now ripe for review.

Upon full consideration of the legal arguments and evidence presented,

Hoover's motion for summary judgment will be granted in part and denied

in part.

II.     Evidentiary Motions.

As a preliminary matter, the Court will address the evidentiary motions filed by both parties in this action.

A.     Plaintiff's Motion to Strike.  (Doc. 23.)

First, Plaintiff asks the Court to strike part of the affidavit of Karen Higgins ("Higgins"), Hoover's Director of Human Resources.  The disputed portion of the affidavit says Hoover requested McKenzie's authorization to release his medical records "[b]ased on Dr. Clark's recommendation and other concerns arising from McKenzie's behavior while on duty."  (Higgins Aff. at 1.)  Plaintiff contends that in her deposition, Higgins testified only that Hoover asked for McKenzie's authorization based on Dr. Clark's recommendation.  (Higgins Dep. at 38-42.)

The law in this circuit is that affidavits, or portions thereof, may be disregarded as a "sham" when "a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, [and the party] thereafter create[s] such an issue with an affidavit that merely contradicts, without explanation, previously given clear

testimony." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984).  Plaintiff fails to point this Court to the "unambiguous question," whose "clear" answer "negate[s] the existence of any genuine issue of material fact."  The only deposition question that specifically addresses the matter at issue reads: "But you asked him to sign some releases, and he complied with your request, and you did that based upon the suggestion of Lita Clark?"  Higgins answers, "Right."  (Higgins Dep. at 39.)  Counsel did not ask Higgins if Dr. Clark's suggestion was the *only* reason McKenzie was asked to release his medical records, and Higgins never testifies as such.  Because Plaintiff has not met his burden to show that the cited portion of Higgins's affidavit should be stricken as materially inconsistent with prior testimony, his motion to strike is DENIED.

> B.    Defendant's Motion to Strike.  (Doc. 25.)

Hoover moved to strike Plaintiff's proposed undisputed material fact #15, which was included in Plaintiff's response to summary judgment and reads as follows:

> It is well established in the scientific literature that people who are on opiod medicines for any length of time do not have any effect to sensorium or decision

> making process as compared with people who take opiod medicine intermittently or acutely. People who take these medicines acutely will have significant changes in their ability to reason, reaction time and so forth. Someone who has been on these medicines for a period of time does not experience those. They experience a couple of things on a regular basis, pain relief and constipation.

(Doc. 22 at 8-9.) Hoover argues that the proposed "fact," is inadmissible hearsay, irrelevant because it does not reference the plaintiff, and the source of the statement does not establish his personal knowledge. Plaintiff's proposed undisputed fact, however, is not evidence. In fact, it is an amalgamation of a sentence written in a letter by Dr. Thomas Ryder, Plaintiff's pain physician, and a couple sentences from his deposition testimony discussing that letter. (Ryder Dep. at 60-61 & Pl. Ex. 2 at 65.) In other portions of his deposition, Dr. Ryder does discuss Plaintiff's individual circumstances. Dr. Ryder's understanding and knowledge of medical or scientific literature and research, and the opinions he derives from that understanding, are accepted by the Court for what they are. The materiality, relevancy, and potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process.

Evidence that cannot be reduced to admissible form at trial was rejected by this Court when making its final decision on Defendant's summary judgment motion. *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999). Because Plaintiff's proposed undisputed fact is a misrepresentation of the evidentiary record due to its contextual omissions, Hoover's motion is GRANTED. The evidentiary foundation for that fact, however, remains a part of the record.

III.    Facts.[1]

McKenzie worked for the Hoover Fire Department as a fire fighter from 1988 until he was placed on administrative leave on May 23, 2007. McKenzie suffered severe injuries in an off-duty car wreck in 2000. These injuries resulted in diminished night vision, loss of short-term memory, and chronic pain. Because of the chronic pain, McKenzie has taken some kind of narcotic pain medication since 2000.

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

In May 2002, McKenzie requested to be transferred from "apparatus operator" to "plug man," to relieve him of driving responsibilities because of his impaired night vision.  Hoover approved the transfer.  In November 2005, and May and June 2006, co-workers reported that McKenzie was having trouble staying awake while on duty and falling asleep during meals.  These events were documented in McKenzie's personnel file and he received written counseling.  McKenzie explained to his supervisors that he was not sleeping because of personal problems and working a second job.  After the November 2005 incident, however, Hoover had McKenzie evaluated by a private physician, and Plaintiff returned with a doctor's statement that he could safely perform fire fighter duties while taking his medications.

In August 2006, McKenzie sustained serious injuries to his feet, legs, and hands in a motorcycle accident unrelated to his job.  He returned to full duty on March 1, 2007, after being released to regular duty with no restrictions and passing the fire department's ability test.

On May 18, 2007, McKenzie made inappropriate comments and touched a woman at a Home Depot while he was in uniform and on duty.  The incident resulted in the filing of a citizen complaint.  McKenzie was referred

to the City's Employee Assistance Program ("EAP") and informed that additional incidents could result in discipline or termination.  On his first visit to the EAP, McKenzie again touched a woman inappropriately and the employee complained to the EAP counselor, Dr. Lita Clark ("Dr. Clark").  Dr. Clark asked McKenzie for permission to talk with his physician about the possible effects of his medications, and McKenzie refused.  Dr. Clark subsequently recommended that Hoover's medical director evaluate McKenzie's fitness for duty.

Dr. Donald Brobst ("Dr. Brobst"), a private practice physician in Prattville, Alabama, has served as the Hoover Fire Department medical director since 2002.  Hoover asked Dr. Brobst to conduct McKenzie's fitness for duty examination.  McKenzie provided authorizations for his doctors to release records to Dr. Brobst, but then rescinded those authorizations. Based on his review of the medical records he was able to obtain, Dr. Brobst concluded on July 26, 2007, that McKenzie was a safety risk to himself, and possibly to others, in the performance of his duties and should not be permitted to work as a fire fighter under sections 3-20, 3-20.2, and 3-3 of the "National Fire Protection Association 1582 Standard on Medical

Requirements for Fire Fighters and Information for Fire Department Physicians" ("NFPA 1582").  Specifically, Dr. Brobst testified that he was concerned about Plaintiff's ability to see in heavy smoke while fighting fires.  Dr. Brobst also testified that he felt it was dangerous for McKenzie to work as a fire fighter given the dosage and type of medications he was taking, combined with McKenzie's admitted levels of pain.  Dr. Brobst did not meet with McKenzie as a part of his review.

NFPA 1582 was adopted by the Hoover Fire Department in 1997 as part of its qualification standards for fire fighters, and it has been approved as an American national standard by the American National Standards Institute.  NFPA 1582 § 3-20 pertains to chemicals, drugs, and medications.  Specifically, § 3-20.2 states:

> Category B medical conditions shall include the following:
> (1)   Anticoagulant agents
> (2)   Cardiovascular agents
> (3)   Narcotics
> (4)   Sedative-hypnotics
> (5)   Stimulants
> (6)   Psychoactive agents
> (7)   Steroids
> (8)   Any other chemical, drug, or medication

that results in a person not being able to
perform as a member.

"Category B" medical conditions are medical conditions "that, based on its

severity or degree, could preclude a person from performing as a member in

a training or emergency operational environment by presenting a significant

risk to the safety and health of the person or others."  NFPA 1582 § 1-4.5

(2000).  Section 3-3 references eyes and vision, and lists "Any other eye

condition that results in a person not being able to perform as a member" as

a Category B medication condition.

Hoover accepted Dr. Brobst's recommendation and placed McKenzie on

leave with pay for two weeks beginning October 31, 2007.  McKenzie was

informed that if he had any additional records he believed Dr. Brobst should

review, he should forward those records as soon as possible.  Hoover told

McKenzie that if Dr. Brobst did not receive medical records that changed his

opinions, McKenzie would begin drawing accumulated leave on November 14,

2007, and then be placed on leave without pay when his paid leave was

exhausted.  McKenzie did not send additional medical records to Dr. Brobst,

and his current status remains "leave without pay."  McKenzie would be eligible to return to duty as a fire fighter if he were cleared by Dr. Brobst.

IV.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving

party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

V.    Analysis.

McKenzie claims that Hoover violated the ADA when it placed him on involuntary administrative leave without pay based on his actual or perceived disability; made medical inquiries not shown to be job-related and consistent with business necessity; used standards or criteria in a discriminatory manner; used standards or criteria that have the effect of discrimination based on disability; and failed to consider and/or denied reasonable accommodations.

A.    Prima Facie Case of Disability Discrimination.

"In order to establish a prima facie case of discrimination under the

ADA, a plaintiff must demonstrate that he (1) is disabled, (2) is a qualified

individual, and (3) was subjected to unlawful discrimination because of his

disability." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263

(11th Cir. 2007) (quoting *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir.

2000)).   "This standard derives from the ADA's language, stating that 'no

[employer] shall discriminate against a qualified individual with a disability

because of the disability of such an individual.'" *Id*. (quoting 42 U.S.C. §

12112(a).   Hoover contends that Plaintiff cannot satisfy his burden to show

that he is disabled or a "qualified individual."

1.    Disability.

"For the first element of an ADA claim, a plaintiff qualifies as disabled

under the ADA if he has '(A) a physical or mental impairment that

substantially limits one or more of the major life activities . . . ; (B) a record

of such an impairment; or (C) [is] regarded as having such an impairment.'"

*Id*. at 1264 (quoting 42 U.S.C. § 12102(2)).   Plaintiff argues that he has an

actual disability under the ADA and he was regarded as having a disability.[2]

        a.    Actual Disability.

It is undisputed that McKenzie suffered serious injuries in vehicle accidents in 2000 and 2006 that have resulted in physical and mental impairments.  However, "[m]erely having an impairment does not make one disabled for purposes of the ADA."  *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002), *superseded by statute on other grounds by* ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3353 (2008).  In order to qualify as disabled, a plaintiff must show that the impairment limits a major life activity, and the limitation is "substantial."  *Id*.  "Terms like "substantial" must be "interpreted strictly to create a demanding standard for qualifying as disabled."  *Id*. at 197, *superseded by*

---

[2]Plaintiff drops a footnote in his memorandum opposing summary judgment and says: "Due to page limitations, McKenzie will only argue actual and perceived theories, but in doing so, is not abandoning the 'record of' theory."  (Doc. 22 at 10 n.1.) However, failure to make an argument in response to summary judgment does indicate that an issue is abandoned.  *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") If Plaintiff needed more pages in which to make a proper legal argument, he should have asked leave of the Court to file more pages, and he did not do so.  Because Plaintiff failed to argue he had a "record of such an impairment," that issue is deemed abandoned.

ADAA, Pub.L. No. 110-325, 122 Stat. 3353 (2008).[3]  "Substantial" indicates "considerable," or "to a large degree," rather than "in only a minor way." *Id*. at 196.   A substantially limiting impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id*. at 198.  In other words, a plaintiff must be "significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity." *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir.

---

[3]The ADA Amendments Act of 2008 ("the ADAAA"),  Pub.L. No. 110-325, 122 Stat. 3353, became effective on January 1, 2009.   The ADAAA specifically rejects as inappropriately narrow and restrictive the disability standards articulated by the U.S. Supreme Court in *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), and *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).  All of the conduct alleged in the Complaint occurred before the ADAAA became effective.  Plaintiff has not argued that the ADAAA applies to his claims, and the majority of courts addressing the issue have held that the ADAAA is not retroactive. *See, e.g., E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Kiesewetter v. Caterpillar Inc.*, 295 F. App'x. 850, 851 (7th Cir. 2008); *Verhoff v. Time Warner Cable, Inc.*, 299 F. App'x. 488, 494 (6th Cir. 2008); *Geoghan v. Long Island R.R.*, No. 06-CV-1435, 2009 WL 982451, at *8-9 (E.D.N.Y. Apr. 9, 2009) (Pollak, M.J.).   While the Eleventh Circuit Court of Appeals has not addressed the issue in a published opinion, the court's ruling in an unpublished decision suggests that the ADAAA does not apply retroactively. *Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882, 883 n.1 (11th Cir. 2009) ("Plaintiff makes no argument that the amendments should apply retroactively; and absent Congressional expression to the contrary, a presumption against retroactive application applies when the new legislation would 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'"). Therefore, like the *Fikes* court, "we look to the ADA as it was in effect at the time of the alleged discrimination." *Id*.

2004) (quoting 29 C.F.R. § 1630.2(j)(1)).  "[M]itigating measures must be taken into account in judging whether an individual possesses a disability." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999) (citing  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999)).  And, "[t]he impairment's impact must[] be permanent or long term." *Toyota Motor Mfg.*, 534 U.S. at 198.

Plaintiff contends that his physical and mental impairments substantially limit him in the major life activities of sleeping, seeing, working, running, walking, and communicating.  (Doc. 22 at 11-13.)

i.    Sleeping.

It is undisputed that sleeping is a major life activity.  In support of his position that he is substantially limited in sleeping, Plaintiff cites Dr. Thomas Ryder's notes, which state that he can sleep as little as one hour *some* nights." (Ryder Dep. at 42 (emphasis added).)  Dr. Ryder testified that sleep disturbance is common with chronic pain, and Plaintiff suffers from episodic hypersomnolence, which makes it "very hard to sleep."  (*Id*. at 42-43.)  According to Dr. Ryder, "people who have [episodic hypersomnolence] tend to function fairly well, even on small amounts of sleep, until they absolutely

have to sleep."  (*Id*. at 43.)  Other than referencing the few instances when he was disciplined at work for falling asleep while on duty, however, Plaintiff does not argue that his difficulty sleeping affects his waking activities.  (Doc. 22 at 12.)  Defendants counter Plaintiff's evidence by citing records held by Dr. Ryder, which reflect McKenzie often reported sleeping about four hours a night, sometimes more.  (Doc. 26 at 2-3.)  In fact, McKenzie testified at his deposition that he sleeps three or four hours a day.  (McKenzie Dep. at 101.)

A plaintiff who sleeps "'moderately below average' is not disabled" under the ADA.  *Rossbach v. City of Miami*, 371 F.3d 1354, 1358 (11th Cir. 2004).  In *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 784 (7th Cir. 2007), the Seventh Circuit Court of Appeals concluded that three to four hours of sleep per night does not constitute a substantial limitation in the major life activity of sleeping.  *See also Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001) ("While less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population.").  "Difficulty sleeping is extremely widespread."  *Rossbach*, 371 F.3d at 1358 (quoting *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 644 (2d Cir. 1998)).  Because McKenzie has not produced sufficient evidence

to establish his sleeping is restricted to a degree worse than is suffered by "a large portion of the nation's adult population," he has failed to show that he is substantially limited in the major life activity of sleeping. *Id*.

ii.    Seeing.

With regard to his eyesight, Plaintiff argues that he is substantially limited in the major life activity of "seeing," because "even with eye glasses[,] he has difficulty with his night vision." (Doc. 22 at 12.)  Again, it is undisputed that "seeing" is a major life activity.  However, McKenzie offers minimal testimony regarding the effects his "difficulty" with night vision has on his eyesight.  He references his request to transfer positions at the Fire Department to avoid driving responsibilities at night, but there is no evidence that Plaintiff does not drive himself or go out at night.  In fact, at the time of his deposition, McKenzie testified that he was working from "7:00 at night until 4:00 in the morning" on Mondays and Tuesdays, "7:00 at night until 1:00 in the morning" on Fridays, and "3:00 to 11:00" on Saturdays and Sundays.  (McKenzie Dep. at 49.)

"[W]hether a person has a disability under the ADA is an individualized inquiry."  *Sutton*, 527 U.S. at 483.   "The determination of whether an

individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Id*. (quoting 29 C.F.R. pt. 1630, App.§ 1630.2(j)).  Here, Plaintiff's evidence is "couched in vague terms and unaccompanied by any evidence that the described affliction [is] any worse than is suffered by many adults." *Rossbach*, 371 F.3d at 1359.  Therefore, McKenzie has failed to produce sufficient evidence to convince a reasonable jury that his eyesight limitation is "substantial."

iii.   Working.

In order to establish that he is substantially limited in the major life activity of working, a plaintiff must show that he is:

> [S]ignificantly restricted in the ability to perform either *a class of jobs or a broad range of jobs* in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of "working."

*Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369-70 (11th Cir. 1998) (quoting 29 C.F.R. § 1630.2(j)(3)(I)).  A "class of jobs" is:

> The job from which the individual has been

> disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment.

*Id*. at 1370 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)).  A "broad range of jobs in various classes" is:

> The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment.

*Id*. (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(C)).

At the time of his deposition, Plaintiff had worked for approximately a year as a forklift operator.  (McKenzie Dep. at 15.)  He testified that his work duties and hours were not limited or affected by any physical or mental condition, and he intends to obtain a commercial driver's license.  (*Id*. at 22, 45.)  He also testified that he painted houses while still employed by the Hoover Fire Department, and continues to do roofing work, which he has performed for twenty years.  (*Id*. at 120-25.)  McKenzie does not identify a "class of jobs" or "broad range of jobs in various classes" that he cannot do

because of his impairments.  (Doc. 22 at 11-13.)  In fact, McKenzie contends that Hoover was wrong to exclude him from his position as a fire fighter and maintains that he is also able to fully perform those duties.  (McKenzie Dep. at 72.)  On this record, Plaintiff cannot establish that he is substantially limited in the major life activity of working.  *See D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1227 (11th Cir. 2005) (affirming a district court's opinion that "Plaintiff's proven ability to work contradicts any contention that she was substantially limited in the major life activity of working.")

iv.   Running, Walking, and Communicating.

McKenzie also states that he is substantially limited in the major life activities of running, walking, and communicating, but provides no argument to support this bare assertion.  (Doc. 22 at 11-13.)  McKenzie testified that he can "hobble" but cannot run fast (McKenzie Dep. at 70); has to compensate for pain when he walks and turn a certain way going down steps (*Id*. at 72-74); and is irritated by sometimes not being able to find the correct word to use in conversation (*Id*. at 77).  However, he conceded that none of these impairments affected his ability to do his job as a fire fighter. (*Id*. at 70, 75, 77-78.)  In fact, on February 27, 2007, Plaintiff completed a

seventy-five foot balance beam walk in nineteen seconds while carrying a sixteen-pound coiled hose section; successfully climbed an extension ladder placed in the third story window of a drill tower; dragged a 165-pound mannequin seventy-five feet in twenty-six seconds; pulled a charged hose line a distance of 150 feet in thirty-two seconds while wearing helmet, gloves, pants, boots, and coat; and carried rolled sections of hose up four flights of stairs, climbed a ladder to the roof, and then climbed back down the ladder and stairs in less than two minutes while wearing forty-seven pounds of gear.  (Pla's Personnel Records at 316-17.)  Plaintiff simply has not offered any evidence that his running, walking, or communication impairments are "substantial."  *See Rossbach*, 371 F.3d at 1358-59.

While Plaintiff suffers from legitimate health problems, he has failed to show that any of his conditions substantially limits one or more major life activities.  Therefore, he cannot establish that he is actually disabled under the ADA.

b.     Regarded as Disabled.

McKenzie also contends that Hoover is liable for discrimination because it regarded him as disabled.  A plaintiff is "regarded as disabled" if:

Page 21 of  35

> (1) he has a physical impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or (3) has no physical or mental impairment but is treated by an employer as having such an impairment.

*Id*. at 1359-60 (citing 29 C.F.R. 1614.203(a)(5)).  "[A] person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities."  *D'Angelo*, 422 F.3d at 1228 (quoting *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521-22 (1999)).  "Thus, '[a]n employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity.'"  *Id*. (quoting *Sutton*, 527 U.S. at 490).  In order "for a plaintiff to prevail under this theory, he must show two things: (1) that the perceived disability involves

a major life activity; and (2) that the perceived disability is 'substantially limiting' and significant."  *Rossbach*, 371 F.3d at 1360 (citing *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999)).

Plaintiff maintains that Hoover regarded him as substantially limited in the major life activities of seeing and working.  (Doc. 22 at 13-15.)

> i.    Seeing.

Hoover adopted Dr. Brobst's opinion that McKenzie was a safety risk to himself, and possibly to others, in the performance of his duties and should not be permitted to work as a fire fighter under NFPA 1582 §§ 3-20, 3-20.2, and 3-3.  Section 3-3 references eyes and vision, and specifies that "[a]ny other eye condition that results in a person not being able to perform as a member" is a condition "that, based on its severity or degree, could preclude a person from performing as a member in a training or emergency operational environment by presenting a significant risk to the safety and health of the person or others."   NFPA 1582 § 1-4.5 (2000).

Brobst acknowledged that McKenzie's corrected distance vision met fire department standards, but testified that it was his opinion that McKenzie's intermittent blurred vision and night vision put himself and others at risk on the job.  (Brobst Dep. at 121-27, 139.)  Specifically, Dr. Brobst concluded that McKenzie's difficulties with night vision posed a danger while fighting fires because excess smoke and the self-contained

breathing apparatus significantly reduce the amount of light available to see, and seeing is already very difficult under the circumstances. (*Id*. at 125-26.) Brobst's testimony, however, does not establish that he regarded McKenzie's eyesight limitation as "substantial."  Brobst considered the effect of the impairment on Plaintiff's fire fighting duties, and there is no evidence he believed the impairment severely restricted McKenzie's overall vision or everyday activities.  There is also insufficient evidence that the individuals who placed McKenzie on unpaid administrative leave, pursuant to Dr. Brobst's opinion, perceived Plaintiff's vision difficulties as "substantial."

ii.   Working.

There is, however, sufficient evidence to convince a reasonable jury that Hoover regarded McKenzie as substantially limited in the major life activity of working.  Dr. Brobst testified that the combination and dosage of Plaintiff's pain medications, as well as Plaintiff's admitted level of pain, led him to conclude that McKenzie should not be allowed to work as a fire fighter.  He also testified that he would exclude McKenzie from safety-sensitive positions, such as jobs at Hyundai manufacturing or on the police force, as well as work that would require driving a vehicle.  (McKenzie Dep.

at 180-81.)  Hoover relied on Dr. Brobst's opinion when it placed McKenzie on administrative leave without pay, and it is undisputed that Plaintiff's employment status will not change unless Dr. Brobst changes that opinion. The Eleventh Circuit Court of Appeals has held that similar evidence is sufficient to establish that an employer perceived a fire fighter to be "substantially limited from performing a broad range of jobs, including that of firefighter, because of his prescription medication."  *Haynes v. City of Montgomery, Ala.*, 344 F. App'x. 519, 520 (11th Cir. Aug. 27, 2009) (indicating that "[t]he notes and testimony of the doctor hired by the City to perform evaluations of firefighters established that the doctor would not have cleared Haynes to work in any safety-sensitive position or drive a vehicle of any kind, including a fire truck.").  While *Haynes* is an unpublished opinion, its similarity to this case cannot be ignored.  Genuine issues of fact exist as to whether Hoover regarded McKenzie's impairments, including the mitigating measures of his prescription medications, as substantially limiting in the major life activity of working.

2.    Qualified Individual.

Hoover contends that it is nevertheless entitled to summary judgment because Plaintiff cannot show that he is a "qualified individual" under the ADA.  Defendant maintains that McKenzie was a direct threat to his own health and safety.[4]  "An employer may fire a disabled employee if the disability renders the employee a 'direct threat' to his own health or safety."  *Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996) (citing 42 U.S.C. §§ 12113(a), (b); 29 C.F.R. § 1630.2(r)).  "But there is no direct threat defense if the employer could have made "'reasonable accommodation[s].'"  *Id.* (citing 42 U.S.C. 12113(a)).  "The employee retains

_____

[4]Plaintiff contends that Hoover failed to raise the "direct threat" defense as an affirmative defense in its Answer.  Hoover counters that it plead its "qualification standards are job-related for the position in question and consistent with business necessity," and the "direct threat" defense is a business necessity defense.  (Answer ¶ 17.)  The Court finds that Hoover's pleading is sufficient to preserve the "direct threat" defense.  The Eleventh Circuit Court of Appeals specifically cites 42 U.S.C. § 12113(a), as legal support for a "direct threat" argument.  *Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996) Section 12113(a) reads:

> It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

at all times the burden of persuading the jury either that he was not a direct threat or that reasonable accommodations were available." *Id*.

Plaintiff has presented sufficient evidence to create genuine issues of fact whether he could perform his duties as a fire fighter without posing a direct threat to himself.  It is undisputed that McKenzie has never been involved in or caused a work-related accident during his employment as a fire fighter.  He has consistently passed fire fighting ability tests since recovering from his accidents.  Most importantly, none of his treating physicians have imposed any permanent work restrictions or expressed the opinion that he is unfit for fire fighting duties.  Viewed in the light most favorable to the plaintiff, this evidence creates questions of fact whether McKenzie is a "qualified individual" under the ADA.

B.    Burden Shifting.

"Once a plaintiff establishes a prima facie case of discrimination, the defendant-employer must articulate a legitimate, non-discriminatory reason for the challenged action."  *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)).  If the defendant articulates a legitimate, non-

discriminatory reason, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id.* at 1243 (quoting *Chapman*, 229 F.3d at 1024).

As legitimate, non-discriminatory reasons for its decision to place McKenzie on administrative leave without pay, Hoover cites McKenzie's sexual harassment complaints, falling asleep on the job, Dr. Brobst's recommendation, and the NFPA standards.  (Doc. 18 at 22-23.)  Assuming these are legitimate, non-discriminatory reasons, Plaintiff has presented sufficient evidence for a jury to conclude that these reasons are "unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

The last of the cited incidents involving falling asleep at work occurred almost a year before McKenzie was placed on administrative leave.  And, while the first sexual harassment complaint precipitated EAP counseling and later Dr. Brobst's examination, Hoover informed McKenzie that he was being

placed on leave because of Dr. Brobst's recommendation and interpretation of NFPA standards.   In fact, Hoover maintains that "McKenzie would be eligible to return to duty as a fire fighter if cleared by the medical director." (Doc. 18 at 6.)

Dr. Brobst concluded that McKenzie's pain and narcotic pain medication exclude him from fire fighting duties under NFPA guidelines. However, NFPA standards were the same in 2000 as they were when Hoover made its employment decision in 2007.  (Brobst Dep. at 58.)  Hoover has been aware that McKenzie has used narcotic pain mediation since he returned to work following his first accident in 2000.  Dr. Brobst testified he was aware Plaintiff was on narcotic pain medication since he took the position of medical director in 2002.  (Brobst Dep. at 60-61.)  McKenzie's doctors have consistently released him to work as a fire fighter with no restrictions, Hoover allowed McKenzie to work for years while under the influence of pain medication, and McKenzie has never been involved in or caused a job-related accident during his employment.  Viewing this evidence in the light most favorable to the plaintiff, a jury could find Hoover's justification for its employment decision unpersuasive and pretext for

unlawful disability discrimination.

C.    Other Violations.

In the Complaint, Plaintiff also alleges that Hoover violated 42 U.S.C. § 12112(d)(4) by making medical inquiries not shown to be job-related and consistent with business necessity; § 12112(b)(6) by using qualification standards that screen out or tend to screen out individuals with disabilities; § 12112(b)(3) by utilizing standards and criteria that have the effect of discrimination based on disability; and § 12112(b)(5)(a) by failing to consider and/or denying reasonable accommodations.

1.    Medical Inquiries.

In his response to summary judgment, Plaintiff does not brief the issue of whether Hoover violated the ADA by making medical inquiries not shown to be job-related and consistent with business necessity.  Therefore, that claim is deemed abandoned.  *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Even if this claim were not abandoned, the Court finds that the law outlined in *Watson v. City of Miami Beach*, 177 F.3d 932 (11th Cir. 1999),

when applied to the facts of this case, mandates the entry of summary judgment in favor of the defendant.

### 2.    Qualification Standards and Criteria.

Plaintiff contends that Hoover violated 42 U.S.C. § 12112(b)(6) because its use of NFPA 1582 screened him out as an individual with a disability, and § 12112(b)(3) because utilizing NFPA 1582 has the effect of discrimination based on disability.  The former is a disparate-treatment claim[5]; the latter is a disparate-impact claim.  *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003).

### a.    Disparate Treatment.

Plaintiff argues that Hoover applied NFPA 1582 in a manner that excluded him from employment because of his real or perceived disability.  Defendant argues that it cannot be held liable for utilizing NFPA 1582, specifically the qualification standards applied to the plaintiff, because the provisions are permissible as job-related and consistent with business

---

[5]Legal authority allows for the pursuit of a disparate impact claim under § 12112(b)(6), which also prohibits the use of qualification standards that "tend to screen out . . . a class of individuals with disabilities."  *See, e.g.*, *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 839 n.26 (5th Cir. 1999).  However, Plaintiff only argues in his response to summary judgment that Hoover used NFPA 1582 to exclude him, as one individual, from employment.

necessity.

An affirmative business-necessity defense is available when a plaintiff challenges the application of a qualification or standard. *Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 (11th Cir. 2009). In order to benefit from the defense, however, "an employer must prove that the pertinent qualification standard is job-related and consistent with business necessity." *Id.* at 1316-17. The focus is on the manner in which the standard is used by the employer. 42 U.S.C. § 12112(b)(6). "Job[-]relatedness . . . analyz[es] the questions or subject matter contained in a test or criteria used by an employer in making hiring or promotional decisions." *Allmond*, 558 F.3d at 1317 (quoting *Hamer v. City of Atlanta*, 872 F.2d 1521, 1535 (11th Cir. 1989)). "Business necessity, in contrast, 'is larger in scope and analyzes whether there is a business reason that makes necessary the use by an employer of a test or criteria in hiring or promotional decision making.'" *Id.* (quoting *Hamer*, 872 F.2d at 1535).

Hoover has not proven that the NFPA standards, as they were interpreted and used in this case, are "sufficiently tailored to the [fire fighting] position" and necessary for making decisions regarding continued

employment.  *See Allmond*, 558 F.3d at 1317.  The NFPA standard regarding prescription drugs merely states that the use of any drug or medication that "preclude[s] a person from performing as a member in a training or emergency operational environment by presenting a significant risk to the safety and health of the person or others" is grounds for exclusion.  This standard is not specific, is open to different interpretations regarding the definition of "significant risk," and requires a case-by-case analysis and determination for each individual.  As outlined earlier in this opinion, genuine issues of fact exist whether Hoover's interpretation and application of NFPA standards was pretext for unlawful discrimination based on perceived disability.  Accordingly, summary judgment will be denied with regard to McKenzie's § 12112(b)(6) claim.

> b.    Disparate Impact.

"[D]isparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" *Raytheon Co.*, 540 U.S. at 52 (quoting *Teamsters v. United States*, 431 U.S. 324, 335-36 n.15 (1977).  Plaintiff does not argue a

disparate impact theory in his response to summary judgment (Doc. 22 at 28-32), and does not introduce any evidence that other disabled individuals were treated harshly, let alone disproportionately harshly, under the NFPA 1582 standards.  Therefore, Hoover is entitled to judgment as a matter of law on Plaintiff's § 12112(b)(3) claim.

### 3.   Reasonable Accommodations.

"[R]egarded-as disabled individuals[] are entitled to reasonable accommodations under the ADA."  *D'Angelo*, 422 F.3d at 1235.  "An accommodation can qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job."  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998)).  "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions."  *Id.* (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997); *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997)).

McKenzie argues that Hoover failed to engage in an "interactive

process" to identify a reasonable accommodation, but "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant." *Id.* at 1256 n.2 (citing *Willis*, 103 F.3d at 285). Plaintiff suggests that Hoover "could have discussed with McKenzie that he change his pain medications or the amounts that he took," (Doc. 22 at 27) but he does not suggest specific changes or establish that those changes would be effective. Without such evidence, no jury can conclude that an accommodation is available or reasonable. Therefore, Hoover is entitled to summary judgment on this claim.

## VI. Conclusion.

For the reasons set forth above, Hoover's motion for summary judgment will be granted in part and denied in part. A separate order will be entered.

Done this 15th day of March 2010.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297